# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00293-SCT

*IN THE MATTER OF THE ESTATE OF GEORGE FITZNER, DECEASED: OLIVER L. PHILLIPS*

*v.*

*JULIE FITZNER JUROTICH, ADMINISTRATRIX, C.T.A.*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/18/2002 |
| TRIAL JUDGE: | HON. DOROTHY WINSTON COLOM |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | DAVID L. SANDERS |
| | JEFFREY JOHNSON TURNAGE |
| ATTORNEYS FOR APPELLEE: | JAMES W. CRAIG |
| | J. RANDOLPH LIPSCOMB |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | DISMISSED - 06/05/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1.     The Chancery Court of Lowndes County, Mississippi, denied the claim of Oliver L. Phillips (Phillips) against the Estate of George Fitzner (the Estate), deceased.  Phillips, without obtaining a stay in the proceedings, appealed the denial of his claim to this Court which affirmed.  ***In re Estate of Fitzner***, 2003 WL 152377 (Miss. 2003) (***Fitzner I***).  Prior to our mandate in that appeal, the chancellor granted, over Phillips's objection, the estate's petition to sell estate assets.

¶2. Phillips's present appeal raises several issues all related to the general question of whether the sale of estate assets should be stayed pending the appeal of a putative creditor whose claim against the estate has been denied by the chancellor. They are as follows:

I. **Whether Phillips, who had a validly probated claim for over $1,500,000.00 had standing to be heard on the estate's petition to sell assets of the estate.**

II. **Whether a creditor with a claim against an estate is entitled to be served with notice of a petition to sell property of an estate.**

III. **Whether a creditor with a claim that was disallowed, but who has perfected an appeal of the disallowance, must file a supersedeas bond in order to receive notice from the estate upon a petition by the estate to sell estate property.**

IV. **Whether the administratrix of an estate may sell estate property so as to favor family members to the prejudice of a creditor with a disallowed claim even though the creditor has perfected an appeal.**

V. **Whether a sale of estate property is void where the estate did not serve a creditor of the estate with a perfected appeal from a disallowed claim.**

## FACTS

¶3. In 1995, Oliver L. Phillips and George E. Fitzner formed a Mississippi limited partnership, Plantation Pointe, L.P., to operate a retirement home in Columbus, Mississippi. Each owned fifty percent of the partnership, and each made equal contributions to the business until 1996, when Phillips's contributions began to exceed those made by Fitzner. According to Phillips, Fitzner, who was having cash flow problems, orally promised to repay Phillips fifty percent of his contributions plus interest. As the unequal contribution pattern continued, however, Phillips became concerned. He repeatedly asked Fitzner to reduce the promise to pay to writing, but Fitzner always put him off, saying that he promised to pay Phillips back with interest. In 1997, Phillips produced, and Fitzner signed, a memorandum agreement, which provided as follows:

> These parties are the principal partners in Plantation Pointe, L.P.
> (the "Business") and desire to reduce their understanding with respect to

2

financial advances to writing. The Business has considerable expenses and has needed and continues to need infusions of cash. Phillips has been and is in a position to inject cash into the business to a greater extent than Fitzner is able and willing to do. It is agreed that all cash advances made by Phillips to the business in excess of equal advances made by Fitzner shall accrue interest from the date of each such advance at the rate of one and one-half per cent (1½%) above New York prime, compounded monthly. In the event of the sale of all or a part of the business or the ability of the business to pay out income to its partners, Phillips will be repaid his disproportionate advances together with all such accrued interest prior to any other disbursements from the business to any partner.

¶4. Plantation Pointe's tax returns show that Phillips's ownership percentage in Plantation Pointe gradually rose from 50% in 1995 to 92.67% in 1999. Plantation Pointe's books credited every dollar Phillips contributed as a credit to Phillips's capital account.

¶5. Fitzner died in 1999, and estate proceedings were begun. Phillips probated a claim in the amount of $1,527.882.31 against the Estate based on the written memorandum agreement. The Estate filed a motion to disallow Phillips's claim, which the chancellor granted, finding, in effect, that Phillips's claim was against Plantation Pointe, not the Estate:

> The [memorandum] agreement is not ambiguous. No evidentiary hearing is necessary to take parol evidence in order to interpret the agreement. The agreement between Phillips and Fitzner says that they "desire to reduce their understanding with respect to financial advances to writing." Therefore there is no need nor right to vary or add to the written agreement as the parties intended the written agreement to be complete and whole, the integration of their agreement to writing.

¶6. The chancellor[1] allowed Phillips to amend to add a claim that there was an oral contract between Phillips and Fitzner pertaining to the cash advances. The chancellor held:

---

[1]Chancellor Robert L. Lancaster ruled on all matters until he recused himself just before the evidentiary hearing on the motion to disallow Phillips's claim. At that point, the case was assigned to Chancellor Dorothy Winston Colom.

> [A] claim is sufficient if it indicates the nature and extent of the claim, and it may be amended if the amendment does not substantially change the original claim or introduce a new or different claim. . . . The written agreement does not establish an enforceable claim against the estate, and it may not be supplemented by oral agreements. The written agreement however may be modified by a subsequent oral agreement unless prohibited by the statute of frauds.

The amended claim filed by Phillips stated as follows:

> To the extent the written agreement Dated December 15, 1997 was an attempt to reduce their agreement to writing, Fitzner and Phillips had a separate oral agreement that was never reduced to writing. Alternatively, Fitzner and Phillips orally modified their agreement of December 15, 1997 when Fitzner on many occasions orally promised Phillips if Phillips would infuse more of his personal cash into the business, Fitzner would personally repay Phillips for all unequal cash advances ever made by Phillips to the business with interest compounded monthly at a rate of 1½ percent above New York prime.

The chancellor ruled that Phillips failed to prove by clear and convincing evidence that an oral contract was ever made between Phillips and Fitzner. Phillips appealed.[2]

¶7.     Prior to the proceeding during which Phillips's claim was disallowed, the estate filed another petition to sell the dealership. Phillips's attorneys were notified of that petition. The estate alleged in that petition that Fitzner Pontiac, Inc., had a claim against the estate for over $1.2 million dollars, but that the decedent's son, Arthur Fitzner (Arthur), would cause the claim to be dismissed if the dealership were sold to him for $1.6 million. Phillips objected to the sale and presented an affidavit of another prospective buyer of the dealership who Phillips alleged would pay more than Arthur. Phillips moved to disallow the claim of Fitzner Pontiac due to the absence of a filing of any document tending to prove the alleged $1.2 million debt. Fitzner Pontiac, through the same attorney who represents the estate, voluntarily withdrew the claim.

---

[2]The preceding facts were copied verbatim from this Court' earlier opinion in *Fitzner I*.

4

¶8.     After the chancellor denied Phillips's claim (and prior to this Court's mandate in *Fitzner I*), Jurotich, as administratrix, filed a second petition to sell intangibles and again alleged that Fitzner Pontiac had a claim for $1.2 million and alleged that said debt was due and owing from the decedent to Fitzner Pontiac.  The estate also alleged that the estate had a liability to Fitzner Pontiac in the amount of $1.2 million which said liability was due and owing.

¶9.     Regarding the proposed sale of Fitzner Pontiac to Arthur in exchange for Arthur's forgiveness of the alleged $1.2 million debt allegedly owed Fitzner Pontiac by the estate, the petition alleged that, "the forgiveness of this debt materially increases the value of the offer from Arthur R. Fitzner, not only to the other creditors, but to the beneficiaries under the will of George E. Fitzner."

¶10.    Phillips was not listed as a creditor of the estate and received no notice of the petition.  The chancellor approved the estate's petition to sell the dealership.  However, prior to the sale, Phillips learned of the proceeding and filed an emergency motion to set aside the order and to require the adminsitratrix to post a fidelity bond.  Following a hearing on the motion, the chancellor overruled Phillips's motion.  It is from this order that Phillips's present appeal arises.

## ANALYSIS

¶11.    Since the filing of the present appeal, the chancellor's denial of Phillips's claim against the estate has been affirmed by this Court in *Fitzner I*.  Since this Court has adjudicated that Phillips has no claim, no purpose would be served by reviewing the issues raised in the present appeal.  Therefore, Phillips's present appeal, which by necessity relies upon the validity of Phillips's invalid claims against the estate, is dismissed as moot.

## CONCLUSION

¶12.    For these reasons, this appeal is dismissed as moot.

¶13.    **DISMISSED.**

  **PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR.  EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**